*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 04a0428p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re ABU-ALI ABDUR'RAHMAN,

*Movant.*

Nos. 02-6547/6548

---

ABU-ALI ABDUR'RAHMAN,

*Petitioner-Appellant,*

*v.*

RICKY BELL, Warden,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 96-00380—Todd J. Campbell, District Judge.

Argued: December 3, 2003

Decided and Filed: December 13, 2004

Before: BOGGS, Chief Judge; MARTIN, SILER, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, and COOK, Circuit Judges.

---

## COUNSEL

**ARGUED:** Bradley A. MacLean, STITES & HARBISON, Nashville, Tennessee, for Petitioner. Joseph F. Whalen III, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Respondent. **ON BRIEF:** Bradley A. MacLean, STITES & HARBISON, Nashville, Tennessee, William P. Redick, Jr., Whites Creek, Tennessee, for Petitioner. Joseph F. Whalen III, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Respondent.

---

## OPINION

---

COLE, J., delivered the opinion of the court, in which MARTIN, DAUGHTREY, MOORE, CLAY, GILMAN, and GIBBONS, JJ., joined. SILER, J. (pp. 11-16), delivered a separate dissenting opinion, in which BOGGS, C. J., BATCHELDER, ROGERS, SUTTON, and COOK, JJ., joined.

R. GUY COLE, JR., Circuit Judge. Petitioner Abu-Ali Abdur'Rahman appeals the district court's denial of his motion for relief from that court's earlier judgment denying his petition for a writ of habeas

1

corpus. *Abdur'Rahman v. Bell*, 999 F. Supp. 1073 (M.D. Tenn. 1998). The district court held that petitioner's motion for relief from judgment, which he filed pursuant to Rule 60(b), amounted to an impermissible second or successive habeas petition as defined by 28 U.S.C. § 2244(b)(1).

This case requires us to determine whether and under what circumstances a prisoner may use Rule 60(b) of the Federal Rules of Civil Procedure to seek relief from a judgment dismissing a habeas petition. At issue, in particular, is whether and to what extent the availability of Rule 60(b) is restricted by the limits imposed on the filing of second or successive habeas petitions by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub.L. No. 104-132 §§ 101-107, 110 Stat. 1214, 1217-26 (codified as amended in 28 U.S.C. §§ 2244, 2253-2255, 2261-2266 (2000)). Some courts have held that any motion labeled as one pursuant to Rule 60(b) remains fully viable in the habeas context and unaffected by the strictures of AEDPA. Others – including the dissent in this case – would treat any motion based on one or more of the grounds enumerated in Rule 60(b) as a second or successive habeas petition, even if the motion contained no constitutional claim at all.

Today, we eschew both of those extremes and align ourselves with those courts that use a functional approach to determine when a district court may entertain a Rule 60(b) motion filed by a prisoner who seeks to vacate a district court's judgment denying him habeas relief. Although a petitioner should not be permitted to use Rule 60(b) to avoid AEDPA's limitations on second or successive habeas petitions, the solution to that problem is not to bar Rule 60(b) motions in the habeas context altogether. Instead, we hold that a Rule 60(b) motion should be treated as a second or successive habeas petition only if the factual predicate in support of the motion constitutes a direct challenge to the constitutionality of the underlying conviction. In cases which the factual predicate in support of the motion attacks the manner in which the earlier habeas judgment was procured and is based on one or more of the grounds enumerated in Rule 60(b), the motion should be adjudicated pursuant to Rule 60(b). *See Rodwell v. Pepe*, 324 F.3d 66, 67 (1st Cir. 2003).

Because Abdur'Rahman's motion does not constitute a direct challenge to the constitutionality of his conviction, the motion is not the functional equivalent of a second or successive habeas petition. Rather, Abdur'Rahman's motion challenges the procedural basis on which the district court's judgment denying his habeas petition rested and, therefore, should be adjudicated pursuant to Rule 60(b). For that reason, we **REVERSE** the district court's order of dismissal and **REMAND** petitioner's motion to the district court for consideration as a motion brought pursuant to Rule 60(b).

## I.

The history of this case is long and circuitous. *See Abdur'Rahman v. Bell*, 537 U.S. 88 (2002) (Stevens, J., dissenting from the dismissal of certiorari as improvidently granted); *Abdur'Rahman v. Bell*, No. 3:96-0380 (M.D. Tenn., Dec. 17, 2002). Therefore, we set forth only the procedural background relevant to resolving the issues before us.

In 1988, on direct appeal, the Tennessee Supreme Court affirmed Abdur'Rahman's conviction and death sentence for first-degree murder. His attempts to obtain post-conviction relief in the state court system were similarly unsuccessful. In 1996, he filed an application for a writ of habeas corpus in the federal district court and advanced several constitutional claims, two of which raised troubling questions. The first claim challenged the competency of petitioner's trial counsel; the second contained serious allegations of prosecutorial misconduct.

After hearing evidence on both claims, on April 8, 1998, the district court entered an order addressing each claim. First, the district court granted relief as to the ineffective assistance of counsel claim. Having found trial counsel ineffective, the district court granted habeas relief as to petitioner's sentence and vacated the death sentence, although the court denied relief as to petitioner's murder conviction. On appeal, however, a divided panel of this Court reinstated the death sentence, finding that although Abdur'Rahman's

counsel's performance was deficient, Abdur'Rahman had not been prejudiced. *Abdur'Rahman v. Bell*, 226 F.3d 696 (6th Cir. 2000), *cert. denied,* 534 U.S. 970 (2001).

Second, the district court held that the prosecutorial misconduct claims were procedurally barred because Abdur'Rahman failed to seek discretionary review of those claims in the Tennessee Supreme Court and the time for doing so had expired. *Abdur'Rahman*, 999 F. Supp. at 1080-83. However, on June 28, 2001, while the appeal from the district court's denial of Abdur'Rahman's habeas petition was pending – and in response to the United States Supreme Court's decision in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) – the Tennessee Supreme Court promulgated a rule clarifying that criminal defendants were not required to appeal to the Tennessee Supreme Court in order to be deemed to have exhausted all available state remedies concerning claims of error for federal habeas corpus purposes. *See* Tennessee Supreme Court Rule 39 ("TSCR 39"). TSCR 39 states in relevant part:

> In all appeals from criminal convictions or post-conviction relief matters from and after July 1, 1967, a litigant shall not be required to ... file an application for permission to appeal to the Supreme Court of Tennessee following an adverse decision of the Court of Criminal Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.

As the Tennessee Supreme Court stated, TSCR 39 was designed to "clarify that denial of relief by the [Tennessee] Court of Criminal Appeals shall constitute exhaustion of state remedies for federal habeas corpus purposes." *See* In re: Order Establishing Rule 39, Rules of the Supreme Court of Tennessee: Exhaustion of Remedies.

TSCR 39 made it clear that the district court's refusal to consider Abdur'Rahman's prosecutorial misconduct claims on the merits rested on faulty ground because Abdur'Rahman was never required to seek discretionary review of his prosecutorial misconduct claims in the Tennessee Supreme Court, as the district court believed he was. Petitioner alerted the district court to this error on November 2, 2001, when he filed a motion pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the district court's judgment of April 8, 1998, which dismissed his prosecutorial misconduct claims as procedurally barred. Petitioner's motion did not assert any new constitutional claims and did not rely on any newly discovered evidence. It merely asked the district court to vacate its order on the ground that its procedural bar ruling was based on the erroneous assumption that Abdur'Rahman was required to appeal his prosecutorial misconduct claims to the Tennessee Supreme Court.

Relying on *McQueen v. Scroggy,* 99 F.3d 1302, 1335 (6th Cir. 1996), which declared that "[w]e agree with those circuits that have held that a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition," the district court characterized petitioner's motion as a second or successive habeas corpus application, governed by 28 U.S.C. § 2244. On that basis, the district court denied the motion, dismissed it for lack of jurisdiction, and transferred the case to the Court of Appeals pursuant to 28 U.S.C. § 1631. A divided panel of this Court denied petitioner relief, stating that "the district court properly found that a Rule 60(b) motion is the equivalent of a second or successive habeas corpus petition," and then held that Abdur'Rahman's petition did not satisfy the gateway criteria set forth in 28 U.S.C. § 2244(b)(2) for the filing of such a petition. *Abdur'Rahman v. Bell*, Nos. 98-6568/6569, 01-6504 (6th Cir., Jan. 18, 2002). This Court subsequently granted petitioner's request for rehearing *en banc*.

## II.

We turn to the question before us: Is a motion for relief pursuant to Rule 60(b) equivalent to a second or successive habeas petition pursuant to AEDPA? After addressing that question we will apply the answer to Abdur'Rahman's case.

The courts of appeals that have heretofore grappled with this question have provided divergent answers. The Second Circuit seems to be the only court of appeals to have ruled categorically that a motion pursuant to Rule 60(b), brought after a district court's ruling on an initial habeas petition, is not a second or successive habeas petition, and that such motions should always be treated as any other motion pursuant to Rule 60(b). *Rodriguez v. Mitchell*, 252 F.3d 191, 198 (2d Cir. 2001).

At the other end of the spectrum, several courts of appeals, as well as the dissent in our case, have concluded that a Rule 60(b) motion in a habeas case must always – or almost always – be treated as a second or successive habeas petition pursuant to AEDPA. *See, e.g., Gonzalez v. Sec'y for Dep't of Corrs.*, 366 F.3d 1253 (11th Cir. 2004) (en banc) (holding that Rule 60(b) motions must always be treated as second or successive habeas petitions except where the final judgment is recalled or reopened to correct clerical errors in the judgment itself or where there was fraud upon the federal court which led to the denial of the habeas petition); *Lopez v. Douglas*, 141 F.3d 974, 975 (10th Cir. 1998) (holding that the successive petition restrictions contained in 28 U.S.C. § 2244(b) apply to Rule 60(b) motions). A panel of this Circuit has trumpeted that view as well. *McQueen*, 99 F.3d at 1335 ("We agree with those circuits that have held that a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition ...."). According to the Eleventh Circuit, which is the leading proponent of this view, permitting Rule 60(b) to operate as it customarily does would allow prisoners to circumvent AEDPA's restrictions on second and successive habeas petitions in federal courts. *Gonzalez,* 366 F.3d at 1256 ("One of the most popular vehicles used in the attempted end-runs [around AEDPA] is a Fed. R. Civ. P. 60(b) motion requesting that the prior judgment denying relief be set aside.").

But neither of the categorical approaches just described is satisfactory. The wholly unrestricted approach taken by the *Rodriguez* court fails to appreciate the potential for some Rule 60(b) motions to subvert AEDPA's objectives. But the rigid approach, adopted by the Eleventh Circuit and the dissent here, prohibits too much. It fails to appreciate both the significant functional differences between Rule 60(b) motions and habeas petitions and that those differences mean that many Rule 60(b) motions will not run afoul of AEDPA.

Rule 60(b) motions and habeas petitions serve different purposes. Contrary to the dissent's assertion, Rule 60(b) does not permit parties to relitigate the merits of claims, or to raise new claims that could have been raised during the litigation of the case or in the initial habeas petition. Rather, the purpose of a Rule 60(b) motion is to allow a district court to reconsider its judgment when that judgment rests on a defective foundation. The "factual predicate [of a Rule 60(b) motion] deals with some irregularity or procedural defect in the procurement of the judgment denying habeas relief." *Rodwell*, 324 F.3d at 70.

A second or successive habeas petition "is a different species." *Gonzalez,* 366 F.3d at 1292 (Tjoflat, J., concurring in part and dissenting in part). Like an initial habeas petition, a second or successive habeas petition seeks to invalidate the state court's judgment of conviction based on a constitutional error. Pursuant to AEDPA, a "second or successive" habeas petition is meant to address two specific types of constitutional claims by prisoners: (1) claims based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court" and that was "previously unavailable;" and (2) claims that rely on a rule of constitutional law and that are based on evidence that "could not have been discovered previously through the exercise of due diligence" and that would establish the petitioner's factual innocence. 28 U.S.C. § 2244(b)(2). In this way, second or successive habeas petitions are based entirely on "the alleged violations of federal rights" that occur during the criminal trial. *Rodriguez*, 252 F.3d at 199; *see also Abdur'Rahman,* 537 U.S. at 95-96 ("[L]ike all habeas corpus petitions, [a second or successive habeas petition] is meant to remedy constitutional violations ... while a Rule 60(b) motion is designed to cure procedural violations in an earlier proceeding – here, a habeas corpus proceeding – that raise questions about the proceeding's integrity.") (Stevens, J., dissenting from the dismissal of certiorari as improvidently granted).

The dissent would hold that, with the exception of the ground of fraud provided in Rule 60(b)(3), AEDPA precludes the district courts of this Circuit from entertaining Rule 60(b) motions filed by prisoners seeking to vacate a district court's judgment denying them habeas corpus relief. To obtain relief on any of the remaining grounds – Rule 60(b)(1), (2), (4), (5), or (6) – the petitioner would have to fashion his claim as a second or successive habeas petition pursuant to 28 U.S.C. § 2244(b)(2), and must apply to this Court pursuant to 28 U.S.C. § 2244(b)(3) for leave to file it. In other words, the dissent would treat any motion based on one or more of the grounds enumerated in Rule 60(b) as a habeas petition, even if the motion contained no constitutional claim at all. But that approach plainly ignores the significant functional difference between Rule 60(b) motions and habeas petitions, discussed above.

Moreover, the dissent offers no reason for permitting Rule 60(b)(3) motions based on fraud while prohibiting motions brought pursuant to the other provisions enumerated in Rule 60(b). This is puzzling, because fraud is not the only reason to doubt the integrity of a habeas judgment. Rule 60(b)(1), for instance, states that a federal judgment may be reconsidered and vacated if it was based on "mistake, inadvertence, surprise, or excusable neglect." As the Second Circuit noted, the integrity of a habeas judgment might be called into doubt pursuant to Rule 60(b)(1) where the respondent engaged in unfair surprise by failing to notify the petitioner of the witnesses it planned to call in the habeas hearing. *Rodriguez*, 252 F.3d at 199. The dissent in our case offers no reason why fraud on the court would be a valid basis for a Rule 60(b)(3) motion, while such a claim of unfair surprise, filed as a Rule 60(b)(1) motion, would have to be characterized as a second or successive habeas petition. "In each situation, the motion challenges only the etiology of the habeas judgment itself," not the constitutionality of the underlying conviction. *Rodwell*, 324 F.3d at 70. Accordingly, it makes sense to treat both motions pursuant to Rule 60(b).

There is another crucial distinction between Rule 60(b) motions and habeas petitions. Granting a second or successive habeas petition invalidates a prisoner's conviction and/or sentence. Granting a Rule 60(b) motion has no such effect. It merely reinstates the previously-dismissed habeas petition, opening the way for further proceedings. *Abdur'Rahman*, 537 U.S. at 94 ("[T]he difference [between a second or successive habeas petition and a Rule 60(b) motion] is defined by the relief that the applicant seeks.") (Stevens, J., dissenting from the dismissal of certiorari as improvidently granted). Although a Rule 60(b) motion is "undoubtedly a step on the road to the ultimate objective of invalidating the judgment of conviction," the motion itself does not seek that relief. *Rodriguez*, 252 F.3d at 198. As the Second Circuit logically pointed out, "[t]he fact that the Rule 60(b) motion contemplates ultimately the vacating of the conviction is shared with every motion the petitioner might make in the course of pursuing his habeas – motions to compel disclosure or quash the respondent's discovery demands, motions for extension of time to answer the adversary's motion, motions to be provided with legal assistance, motions for summary rejection of respondent's contentions," and even motions for relief from judgment grounded in fraud, which the dissent here would recognize. *Id.* at 198-99. But this fact does nothing to convert the motion into a second or successive habeas petition.

Having distinguished between motions pursuant to Rule 60(b) and second or successive habeas petitions, we are mindful that prisoners might attempt to subvert AEDPA by dressing second or successive habeas petitions in Rule 60(b) garb. The solution to this problem, however, is to adopt a conceptual framework that curtails the potential for abuse while permitting Rule 60(b) motions in appropriate circumstances. To that end, we adopt the First Circuit's approach to this issue:

> The inquiry must proceed case by case. The [district] court must examine the factual predicate set forth in support of a particular motion. When the motion's factual predicate deals primarily with the constitutionality of the underlying state [or federal] conviction or sentence, then the motion should be treated as a second or successive habeas petition. This situation should be distinguished from one in which the motion's factual predicate deals primarily with some irregularity or procedural defect in the procurement of the judgment denying habeas relief. That is the classic function of a Rule 60(b) motion, and such a motion should be treated within the usual confines of Rule 60(b).

*Rodwell*, 324 F.3d at 70 (internal citation omitted).

This approach is functional in nature. Whether a motion will be treated as one pursuant to Rule 60(b) or as a second or successive habeas petition will depend not on the label affixed to the motion, but on its substance. *Id.* at 71. It is only when a petitioner presents a direct challenge to the constitutionality of the underlying conviction that the petition should be treated as a second or successive habeas petition. But if there is no such direct challenge and the petitioner instead challenges the integrity of the district court opinion for one of the reasons provided in Rule 60(b), then the district court must treat the motion as one pursuant to Rule 60(b). *Compare Hamilton v. Newland*, 374 F.3d 822, 824 (9th Cir. 2004) (holding that habeas petitioner's motion for reconsideration of denial of habeas relief must be treated as motion pursuant to Rule 60(b) where petitioner sought to have district court reconsider its prior ruling that his habeas claims were barred by the one-year limitations period under AEDPA), *with Rodwell*, 324 F.3d at 71-72 (holding that petitioner's motion for relief from judgment denying federal habeas relief, brought pursuant to Rule 60(b), was a second or successive habeas petition, and thus was required to be dismissed, because it asked the district court for an opportunity to offer facts – namely, that one of the key witnesses against petitioner was an undercover government agent – that would prove that his state-court conviction for murder was constitutionally infirm), *and Thompson v. Calderon*, 151 F.3d 918, 921 (9th Cir. 1998) (en banc) (treating a Rule 60(b) motion that raised a new claim that the state failed to disclose exculpatory evidence as a successive habeas petition). This ruling applies with equal force to motions brought in the 28 U.S.C. § 2255 context since AEDPA incorporates by reference in § 2255 the same "second or successive" rules imparted in § 2254.

Although, as the First Circuit noted, "this test [would not] operate with mathematical precision," it would preserve the independent goals of both Rule 60(b) and AEDPA, and we should be "confident that ... the district [court would] be able to sift wheat from chaff without undue difficulty." *Rodwell*, 324 F.3d at 71.

The holding in *McQueen v. Scroggy*, 99 F.3d 1302 (6th Cir. 1996), that endorsed the rigid approach we have just rejected is hereby overruled.

### III.

We now consider Abdur'Rahman's motion, which asks the district court to vacate its judgment denying his habeas petition on the ground that he was never required to raise his prosecutorial misconduct claims before the Tennessee Supreme Court for exhaustion purposes. That motion does not present a direct challenge to the constitutionality of his state court conviction. Instead, it relates to the integrity of the federal habeas judgment – and specifically, the basis for the district judge's procedural default ruling. If Abdur'Rahman's motion were granted, it would simply result in the reopening of the federal habeas proceeding, not the vacation of the state criminal judgment. Accordingly, the motion should be treated as one pursuant to Rule 60(b), not as a second or successive habeas petition.

The dissent erroneously argues that Abdur'Rahman's motion is a second or successive habeas petition because his prosecutorial misconduct claims – by virtue of being deemed procedurally defaulted – were adjudicated "on the merits." But that argument privileges the form of the judicial disposition over the substance of the motion, and once again ignores the key functional differences between Rule 60(b) motions and second or successive habeas petitions. That procedural default rulings are typically considered rulings "on the merits" does not change the fact that Abdur'Rahman's motion does not directly seek relitigation of claims already adjudicated. Rather, Abdur'Rahman challenges the procedural basis on which the district court's judgment concerning his prosecutorial misconduct claim rested. *See Hamilton*, 374 F.3d at 824 (holding that habeas petitioner's motion for reconsideration of denial of habeas relief must be treated as motion pursuant to Rule 60(b) where petitioner sought to have district court reconsider its prior ruling that his habeas claims were barred by the one-year limitations period under AEDPA).

Rule 60(b) authorizes the district courts to relieve a party to a civil action from the force of a final judgment on the following grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence [the party] could not have ... discovered in time to move for a new trial under Rule 59(b); (3) fraud ... misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of judgment.

Abdur'Rahman has characterized his motion as one pursuant to Rule 60(b)(6), which permits relief from judgment for "any other reason justifying relief from the operation of judgment." This provision has been called a "reservoir of equitable power" to do justice in a particular case. *Compton v. Alton S.S. Co., Inc.*, 608 F.2d 96, 106 (4th Cir. 1979). For that reason, there is concern for abuse of a Rule 60(b)(6) motion in habeas proceedings – perhaps more concern than there is with other Rule 60(b) motions whose nature is more easily ascertained. But Rule 60(b)(6) has been narrowly interpreted and courts have stressed that such motions should only be raised in exceptional or "extraordinary circumstances." *Liljeberg v. Health Svcs. Acquisition Corp.,* 486 U.S. 847, 863-64 (1988); *Pierce v. United Mine Workers*, 770 F.2d 449, 451 (6th Cir. 1985). Furthermore, this provision and other provisions of Rule 60(b) are mutually exclusive – that is, if the reason offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1) -(5), then relief cannot be granted under Rule 60(b)(6). *Liljeberg*, 486 U.S. at 863 & n.11.

Here, the only other provision pursuant to which Abdur'Rahman's motion might conceivably be brought is Rule 60(b)(1)'s provision for relief from judgment when there has been a "mistake." But in this case, it simply stretches logic to say that the district court made a "mistake" when it held Abdur'Rahman's prosecutorial misconduct claim unexhausted based on his failure to appeal it to the Tennessee Supreme Court. Although TSCR 39 – which states that defendants do not have to appeal to the Tennessee Supreme Court in order for their claims to be considered exhausted for habeas purposes – is a clarification of pre-existing law, review by a state supreme court was, before TSCR 39's promulgation, an available state remedy that defendants traditionally pursued because all available state remedies had to be exhausted prior to the claims being eligible for habeas review. *See Adams v. Holland,* 330 F.3d 398, 405 (6th Cir. 2003) (holding that a discretionary appeal to the Tennessee Supreme Court is not required for federal exhaustion purposes under TSCR 39) .[1]

---

[1] In *O'Sullivan*, the Supreme Court held that absent an express pronouncement by the State, a federal court must require a *habeas* petitioner to exhaust all state remedies, including discretionary review before the state supreme court, in order to satisfy federal *habeas* exhaustion requirements. *See O'Sullivan*, 526 U.S. at 847-48. Therefore *O'Sullivan* explicitly noted that a State could require something less than discretionary review before the highest state court for the purposes of federal exhaustion.

Contrary to the dissent's assertions, *Adams v. Holland* did not "effectively overrule[] *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)." In *O'Sullivan*, the Supreme Court noted under 28 U.S.C. § 2254(c), a *habeas* petitioner must give state courts a "*fair* opportunity to act on their claims .... Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *O'Sullivan,* 526 U.S. at 844 (emphasis in original, interior citations removed). This was required even in Illinois, which has discretionary state supreme court review, and where Illinois Supreme Court Rule 315(a) arguably discouraged the filing of "petitions raising routine allegations of error." *Id.* at 846.

However, the Supreme Court noted that such a ruling may, in fact, result in a greater burden on the state supreme courts.

> We acknowledge that the rule we announce today – requiring state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State – has the *potential* to increase the number of filings in state supreme courts. We also recognize that this increased burden may be unwelcome in some state courts because the courts do not wish to have the opportunity to review constitutional claims before those claims are presented to a federal habeas court. *See, e.g., In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases,*

Indeed, prior to TSCR 39's promulgation, federal courts interpreting Tennessee law required appeal to the Tennessee Supreme Court as part of the habeas exhaustion requirement. *See, e.g., Jones v. Jones*, 76 F. Supp. 2d 850, 856-57 (E.D. Tenn. 1999); *Cole v. Campbell*, 703 F. Supp. 657, 659 (M.D. Tenn. 1988); *Layman v. Russell*, 300 F. Supp. 430, 431 (E.D. Tenn. 1969). These district courts – and the district court in this case – did not make a "mistake" in requiring defendants to appeal to the Tennessee Supreme Court, because they simply had no reason – based on United States Supreme Court law, state law, and federal court precedents – to know otherwise. Indeed, this presumption was later ratified by the Supreme Court in *O'Sullivan. See O'Sullivan*, 526 U.S. at 847-48.[2] But TSCR 39 eventually clarified that such an appeal was not, in fact, required. As such, Abdur'Rahman's motion is properly characterized as a Rule 60(b)(6) motion. It does not relitigate the merits of his prosecutorial misconduct claim, but rather asks the district court to reconsider its judgment, which was based on a defective foundation: namely, an unclear state of the law, which was later clarified. This analysis does not chart new legal territory, as the dissent suggests. Federal courts have applied Rule 60(b)(6), as opposed to a Rule 60(b)(1) "legal mistake," where a state supreme court clarifies existing state law. *See, e.g., Heirs-At-Law & Beneficiaries of Gilbert v. Dresser Indus., Inc.*, 158 F.R.D. 89, 92 (N.D. Miss. 1993).

Rule 60(b)(6) has no specific time limitation within which it must be filed, save that it be brought within a "reasonable time." Fed. R. Civ. P. 60(b)(6). The reasonable time standard has been interpreted to depend on the factual circumstances of each case. *Smith v. Sec'y of Health and Human Svcs.*, 776 F.2d 1330, 1333 (6th Cir. 1985). Here, Abdur'Rahman has satisfied the reasonable time requirement. TSCR 39

---

321 S.C. 563, 471 S.E.2d 454 (1990); *see also State v. Sandon*, 161 Ariz. 157, 777 P.2d 220 (1989). Under these circumstances, Boerckel may be correct that the increased unwelcome burden on state supreme courts disserves the comity interests underlying the exhaustion doctrine. In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that the remedy is unavailable.

*Id.* at 847 (emphasis in original).

As noted in the above quotation, the *O'Sullivan* majority cited approvingly to South Carolina's statement regarding *habeas* exhaustion, *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). *See O'Sullivan*, 526 U.S. at 847. Justice Souter, writing separately, quoted the South Carolina rule:

[I]n all appeals from the criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

*Id.* at 849 (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990)). Justice Souter further noted "[The majority's citation of the South Carolina rule] should not be read to suggest something more: that however plainly a State court may speak, its highest court must be subjected to constant applications for a form of discretionary review that the State wishes to reserve for truly extraordinary cases, or else be forced to eliminate that kind of discretionary review." *Id.* at 849-50.

In response to *O'Sullivan*, the Tennessee Supreme Court promulgated TSCR 39, modeled after the South Carolina Rule, to clarify that a request for discretionary review was in fact, not required for the purposes of exhaustion. This is the essential holding of *Adams*, 330 F.3d at 403-04.

Given the Tennessee Supreme Court's adoption of a rule specifically endorsed by the majority opinion in *O'Sullivan* for a purpose specifically advocated by a concurring justice, it is surprising that the dissent believes *Adams* somehow overrules Supreme Court precedent.

[2]For this reason, the dissent in not persuasive in stating that the district court made a "legal mistake" in ruling the petitioner failed to exhaust. Like the Supreme Court in *O'Sullivan*, the district court merely applied a *presumption* that a state supreme court wishes to be the first court to review a *habeas* petitioner's claims. *See O'Sullivan*, 526 U.S. at 847-48. Such a presumption, like all presumptions, does not necessarily determine whether the state court *actually* wishes to be the first court to review these claims. Accordingly, the district court cannot be viewed as making a "legal mistake" by correctly applying presumptions later endorsed by the Supreme Court – presumptions which may or may not accurately reflect the *actual* wishes of the state supreme court. Nor can the state supreme court be said to change its own law where it merely corrects a presumption of a federal court regarding state court procedures applicable to state court review.

became effective on June 28, 2001 and Abdur'Rahman filed his Rule 60(b) motion approximately four months later, on November 2, 2001.

As noted above, Rule 60(b)(6) should be used only in "extraordinary circumstances." *Liljeberg*, 486 U.S. at 863-64. Although TSCR 39 is not accurately characterized as a change in law, but rather a clarification of the law, the "extraordinary circumstances" analysis here is most analogous to that which would be used if we were confronting a change in law, and so we apply that analysis here. A change in decisional law is usually not, by itself, an extraordinary circumstance. *Agostini v. Felton*, 521 U.S. 203, 239 (1997); *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). There must be a change in decisional law "coupled with some other special circumstance" to grant relief under Rule 60(b)(6). *Id.* at 524.

In this case, relief pursuant to Rule 60(b)(6) is permissible for two reasons. First, TSCR 39 does not constitute a clarification in *decisional* law such that *Agostini* even applies or such that an "extraordinary circumstance" is even required. The decisional law in this case is comprised of the precedent governing claims of prosecutorial misconduct. *See*, *e.g., Brady v. Maryland*, 373 U.S. 83 (1963). If the district court had reached the merits of Abdur'Rahman's claims and determined that no prosecutorial misconduct took place, but then the Supreme Court altered *Brady* such that the district court's holding was wrong, there would be no grounds for relief pursuant to Rule 60(b)(6). But TSCR 39 does not similarly alter decisional law; it clarified the law underlying the district court's decision not even to reach the merits of Abdur'Rahman's constitutional claim. *Cf. In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 250 (9th Cir. 1989) (granting relief pursuant to Rule 60(b)(6) when Congress passed a statute, which capped referee fees in bankruptcy proceedings, shortly after the parties reached a settlement to pay fees that were four times the cap; court rejected the argument that unexpected changes in statutory law are similar to situations in which a party decides not to appeal but then gets a "second bite at the apple" by free-riding off of a change in decisional law resulting from an unrelated party's successful appeal, which then alters the case law).

Second, even if TSCR 39 were considered a clarification of decisional law, there is an "extraordinary circumstance" here, stemming from the nature of Abdur'Rahman's "default." As is well-established (although sometimes muddled by courts), two types of procedural barriers might preclude federal review of claims in a habeas petition. The first type, procedural default, is a judicially created rule, grounded in fealty to comity values and requiring federal courts to respect state court judgments that are based on an "independent and adequate" state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing a four-part test for determining whether a procedural rule is an independent and adequate state ground). In procedural default cases, the state court or courts reject a direct or post-conviction appeal because the defendant failed to comply with some state law or rule concerning timeliness, pleading requirements, sufficient evidence, or the like.

The second type of bar, exhaustion, is similarly grounded in respect for state court procedures, but it is federally mandated by AEDPA, *see* 28 U.S.C. § 2254(b)(1)(A), (c), and requires petitioners to give state courts a "fair opportunity" to assess petitioners' claims. *O'Sullivan*, 526 U.S. at 844. Often, federal courts will rule that a petitioner's claim is "defaulted" because the petitioner failed to exhaust his remedies and the time for refiling an appeal in the state court has passed. The unexhausted claim is then classified as "procedurally defaulted" and deemed forfeited absent a showing of cause and prejudice. *See In re Cook*, 215 F.3d 606, 607-08 (6th Cir. 2000).

This second type of procedural barrier, forfeiture by failure to exhaust, is what the district court relied upon in dismissing Abdur'Rahman's prosecutorial misconduct claim. But exhaustion and procedural default are distinguishable in an important sense. A defendant could fail to exhaust a claim without procedurally defaulting if he could return to the state courts to exhaust. Alternatively, as in this case, the defendant could fail to exhaust without defaulting if a clarification in procedural law indicates that he has already taken the necessary action to exhaust. That is, forfeiture by failure to exhaust entails a legal fiction, of sorts. The state court has not rejected an appeal based on a state rule violation; there is no declaration

by the state court of an independent and adequate state ground to which the federal court must defer. Instead, the federal court makes a presumption that the state court *would* reject the appeal on independent and adequate state grounds *if* the petitioner tried to file it. But, by declaring the claim forfeited, the federal court saves the petitioner and the state court from respectively preparing and rejecting a futile filing. The federal court then views the claim through the lens of procedural default to determine whether there is cause and prejudice to excuse the default. In short, the crux of forfeiture by failure to exhaust is that the federal court's default decision rests upon a presumption about what the state court *would* do, rather than respect for what a state court actually *did*. Accordingly, here, the district court's presumption about Tennessee's procedural rules is the factor that renders the promulgation of TSCR 39 an "extraordinary circumstance," permitting possible relief pursuant to Rule 60(b)(6). The district court held that Abdur'Rahman's prosecutorial misconduct claims were forfeited by failure to exhaust because, it (1) presumed that he had to raise his prosecutorial misconduct claims before the Tennessee Supreme Court and (2) found that he failed to do so and that the statute of limitations for returning to state court to exhaust the claims had expired. The district court then analyzed his claim pursuant to the principles of procedural default.

But, pursuant to TSCR 39, Abdur'Rahman was never required to raise his claims before the Tennessee Supreme Court for exhaustion purposes. Accordingly, the speculation supporting the district court's default finding crumbles. It then becomes impossible to see how the State of Tennessee, the federal court, or the dissent here has any interest in upholding the district court's ruling in this case, which contravenes the State of Tennessee's express policy concerning the exhaustion of state remedies. Indeed, enforcing the district court's judgment in this case would *disserve* the comity interests enshrined in AEDPA by ignoring the state court's view of its own law. *See Stringer v. Black*, 503 U.S. 222, 235 (1992) ("It would be a strange rule of federalism that ignores the view of the highest court of a State as to the meaning of its own law.").

## IV.

We hold that the district court erroneously treated petitioner's motion as a second or successive habeas petition. Because Abdur'Rahman's motion is properly characterized as a motion pursuant to Rule 60(b)(6), we **REVERSE** and **REMAND** the case to the district court to consider whether the motion should be granted, based on the potential merit of Abdur'Rahman's prosecutorial misconduct claims previously found to have been procedurally defaulted.

———————

**DISSENT**

———————

SILER, Circuit Judge, dissenting. In analyzing the issue presented by this appeal, an important issue of federal law post-ADEPA, as to which the circuits are currently split, I begin from the dual propositions that (1) because Abdur'Rahman in his Rule 60(b) motion does not advance any new claims (and merely seeks reconsideration of the court's earlier procedural default ruling as to the bulk of his prosecutorial misconduct claims), 28 U.S.C. § 2244(b)(1) is the controlling subsection; and (2) the scope of this subsection is less expansive than the text suggests. We know this latter proposition to be true because, though a literal reading of the statute would hold that *any* petition filed after a first would be "second or successive," the Supreme Court has rejected such a view. *See Slack v. McDaniel,* 529 U.S. 473 (2000) (holding that § 2244(b) did not apply to petitioner's second habeas petition because his first had been dismissed as unripe); *Stewart v. Martinez-Villareal,* 523 U.S. 637 (1998) (holding that § 2244(b) did not apply to petitioner's second habeas petition because his first had been dismissed for want of exhaustion). *But see Stewart v. Martinez-Villareal,* 523 U.S. 637, 646-48 (1998) (Scalia, J., dissenting); *id.* at 648-52 (Thomas, J., dissenting).

On the other side of the coin, however, it is clear that in considering whether a second petition is "second or successive" for purposes of § 2244(b)(1), substance and not form is determinative. A subsequent filing can be considered a "second or successive habeas corpus application" even if not expressly labeled as such. "In a § 2254 case, a prisoner's motion . . . [respecting] the basis of the merits of the underlying decision can be regarded as a second or successive application for purposes of § 2244(b). Otherwise, petitioners could evade the bar against relitigation of claims presented in a prior application . . . ." *Calderon v. Thompson,* 523 U.S. 538, 553 (1998).

The ultimate issue, of course, is just when *is* a numerically second petition or filing indeed "second or successive" for purposes of § 2244(b)(1). Beyond the faint contours set up by *Slack* and *Martinez-Villareal,* the boundaries of the statute are admittedly indefinite. But despite the uncertainty on the fringes, I find this much to be clear: a Rule 60(b) motion that seeks to relitigate a procedural default ruling already once adjudicated in a first habeas petition is "second or successive" under § 2244(b). To hold otherwise would be effectively to eviscerate AEDPA.

In arguing against the applicability of § 2244(b)(1), Abdur'Rahman places heavy reliance on *Slack* and *Martinez-Villareal*, as well as a third case in which the Supreme Court found § 2244(b) inapplicable, *Calderon,* 523 U.S. at 538. It is true that such cases can be read to support the proposition that, at least in some cases, the statute does not mean what it says. The problem, however, is that *Slack, Martinez-Villareal,* and *Calderon* are all easily distinguished and in fact help Abdur'Rahman's cause little, if at all.

*Calderon* arguably is not even a "successive" petition case. There, in the course of holding that the court of appeals had abused its discretion in recalling its mandate, the Court found § 2244(b)(1) inapplicable because in recalling the mandate the court of appeals had expressly stated that it had acted on the basis of petitioner's *first* habeas petition. *Calderon,* 523 U.S. at 554. The court of appeals had not "consider[ed] matters presented in [the] later filing." *Id.* In basing his Rule 60(b) motion on the Tennessee Supreme Court's newly-promulgated Rule 39, Abdur'Rahman, however, asked the district court below to consider matters going beyond those included in his initial petition.

*Slack* and *Martinez-Villareal* are of only slightly greater relevance. In both of these cases, the dismissal of the petitioner's first habeas petition was not "on the merits." *Slack,* 529 U.S. at 489 (first habeas petition dismissed as unripe); *Martinez-Villareal,* 523 U.S. at 645-46 (first habeas petition dismissed for failure to exhaust). Despite Abdur'Rahman's efforts to characterize the dismissal of his petition for procedural default as a purely procedural dismissal that failed to reach the merits of his claim, we have

consistently held that procedural default determinations are "on the merits." *See In re Cook,* 215 F.3d 606, 608 (6th Cir. 2000);  *see also Carter v. United States,* 150 F.3d 202, 205-06 (2d Cir. 1998);  *Bates v. Whitley,* 19 F.3d 1066, 1067 (5th Cir. 1994).  As we noted in *Cook,* lack of ripeness and failure to exhaust are defects which may ultimately be cured, at such time allowing the petitioner to bring his claim before a federal court.  *Cook*, 215 F.3d at 608.  Procedural default, on the other hand, is an incurable defect, absent a showing of cause and prejudice.  *Id.*  Where a district court has found procedural default and a lack of cause and prejudice, that finding fully disposes of the petitioner's claims.

In the final analysis, it is this fact - that Adbur'Rahman's prosecutorial misconduct claims were adjudicated "on the merits"- that makes this case different.  The question may fairly be asked: if a Rule 60(b) motion that seeks to relitigate a claim already adjudicated "on the merits" in a first habeas petition is not "second or successive," what is?  Abdur'Rahman was entitled to an adjudication;  he got it.  It is not the province of this court to sit in judgment of Congress's prohibition against rehashing claims - only to recognize it.[1]  The fact of a "subsequent legal development" does not change this.  AEDPA cannot be whimsically cast aside.  We cannot rewrite the language of the statute to provide for a second merits adjudication when the statute clearly says otherwise.  If the statute is to mean anything, it must mean that when a petitioner has had certain claims in a first habeas petition adjudicated "on the merits," a subsequent filing seeking reconsideration of that adjudication is "second or successive."

While my view rests primarily on the recognition that Abdur'Rahman's claims have already been once adjudicated, I note that it is supported by other considerations.  For one, AEDPA's structure and history support my conclusion.  In AEDPA, Congress dramatically altered the habeas corpus statute governing successive petitions.[2]  Most significant was the removal of any reference to "adjudication" on the "merits."  This textual change suggests that Congress intended to relax the standard for what is considered a "petition," and consequently - by inference - what is considered a "successive" petition.

A vital tenet is that AEDPA's limitations on habeas relief trump Federal Rule of Civil Procedure 60(b).  *See, e.g., Pitchess v. Davis,* 421 U.S. 482, 489 (1975) ("Since the exhaustion requirement is statutorily codified, even if Rule 60(b) could be read to apply to this situation it could not alter the statutory command.");  *Dunlap v. Litscher,* 301 F.3d 873, 875 (7th Cir. 2002) (Posner, J.) ("Th[e] provisions [of AEDPA] are clear and bar a district court from using Rule 60(b) to give a prisoner broader relief from a judgment rendered by the court in a prisoner's federal habeas corpus . . . proceeding.  Otherwise AEDPA's limitations on collateral attack would be set at naught.");  Fed. R. Civ. P. 81(a)(2) ("These rules are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in statutes of the United States . . . .").  Also, even if Rule 60(b) could be said to apply, the language of the Rule does not support Abdur'Rahman's position.  He made his motion under Rule 60(b)(6), but this subsection does not include mistakes of law.  Mistake of law *is* included in Rule 60(b)(1), but motions made under that subsection must be made "not more than one year after the judgment, order, or proceeding was entered or taken."  Fed. R. Civ. P. 60(b).  Thus, the time for making such a motion has long since passed, and it assuredly is not the case that AEDPA *expanded* the reach of Rule 60(b) in general or Rule 60(b)(6)

---

[1] The majority asks "how the state of Tennessee, the federal courts, or the dissent here has any interest in upholding the district court's ruling in this case."  But I submit that this is the wrong question.  This court is not called upon to weigh the various "interests" involved here - only to enforce the plain language of AEDPA.

[2] The predecessor version of § 2244(b) read:

When after an evidentiary hearing *on the merits* of a material factual issue, or after a hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States . . . release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus on behalf of such a person need not be entertained . . . unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ . . . .

28 U.S.C. § 2244(b) (1994) (emphasis added).

in particular. *See Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863 (1988) ("Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment 'upon such terms as are just,' provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)."); *Klapprott v. United States,* 335 U.S. 601, 613 (1949) (holding that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if the motion is based on grounds specified in clause (1), which include "mistake, inadvertence, surprise or excusable neglect."). In view of the one-year limitation on claims of a mistake of law or fact, excusable neglect, newly-discovered evidence and like claims for relief under Rules 60(b)(1)-(3) and in view of the general rule that Rule 60(b) may not be used "as a substitute for an appeal" or "as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise," *Hopper v. Euclid Manor Nursing Home, Inc.,* 867 F.2d 291, 294 (6th Cir. 1989), the problem we face today of a conflict between a provision of Rule 60(b) and AEDPA will rarely, if ever, arise as to the types of claims enumerated in Rule 60(b)(1)-(3).

Although acknowledging the well-established rule that a party may not bring a claim under Rule 60(b)(6) if his claim could be considered under Rule 60(b)(1), the majority dismisses the applicability of Rule 60(b)(1), declaring that "the district court in this case [] did not make a 'mistake' in requiring defendants to appeal to the Tennessee Supreme Court, because they simply had no reason–based on United States Supreme Court law, state law, and federal court precedents–to know otherwise." The majority also holds, however, that Rule 60(b)(6) is applicable here because "the district court erroneously treated petitioner's motion as a second or successive habeas petition." In other words, the majority holds that Rule 60(b)(6) is applicable because the district court had previously made a legal error – failing to recognize that even prior to the promulgation of TSCR 39, Tennessee law did not require criminal defendants to raise their claims before the Tennessee Supreme Court to meet AEDPA's exhaustion requirement. But "[t]his Court has recognized a claim of legal error as subsumed in the category of *mistake* under Rule 60(b)(1)." *Pierce v. United Mine Workers of Am., Welfare & Retirement Fund for 1950 and 1974*, 770 F.2d 449, 451 (6th Cir.1985) (citing *Barrier v. Beaver*, 712 F.2d 231, 234 (6th Cir.1983)) (emphasis added); *accord United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002). To borrow the majority's phrase, it "simply stretches logic" to construe the district court's decision as anything other than a "mistake." And yet the majority does just this without providing a reason to explain how ignorance alone–however justifiable–transforms a court's legal error into something other than a "mistake" for the purposes of Fed. R. Civ. P. 60(b).

The majority nonetheless offers justification for the district court's failure to know the legal exhaustion rule by noting that "TSCR 39 eventually clarified that such an appeal was not, in fact, required." Here, the majority seems to agree with *Adams v. Holland*, 330 F.3d 398 (6th Cir. 2003), in which a panel of this court declared that "Rule 39 *clarifies* existing law rather than *changing* the law." *Id.* at 405 (emphasis added). While the distinction between clarification and change may seem trivial, the *Adams* court recognized that the difference is important in determining the retroactive effect of Rule 39. Because it deemed Rule 39 a mere clarification–that is, Rule 39 made clear what Tennessee's rule always had been–the *Adams* court found that the rule applied retroactively. Conversely, the *Adams* court suggested, if Rule 39 effected a change in the exhaustion requirement, then it is unclear that Rule 39 would apply retroactively in general, in turn raising doubts as to whether Rule 39 would apply to Abdur'Rahman in particular.

Despite calling Rule 39 a "clarification," for purposes of determining whether Abdur'Rahman's claim may be brought under Rule 60(b)(6), the majority undertakes the "extraordinary circumstances" analysis ordinarily utilized when the claim is that there has been a change in the law. While the majority opinion states that it is reasoning by analogy, it is difficult to see how such an analogy would apply unless the "clarification" substantively "changes" the very rule in question. The majority therefore seeks to maintain the "clarification" nomenclature of *Adams*, while infusing it with the meaning of "change."

We are left then with two inescapable options: either Rule 39 merely clarifies what had always been the law, in which case the district court made a legal mistake in holding that Abdur'Rahman had failed to exhaust his claim because he did not raise it before the Tennessee Supreme Court, or Rule 39 changed the

law, in which case *Adams* is wrongly decided, and the majority should make clear that it is overruling that precedent. If the first option is true, then, to the extent Rule 60 motions are now deemed permitted post AEDPA, Abdur'Rahman's claim properly arises under Fed. R. Civ. P. 60(b)(1) rather than 60(b)(6)–and the motion should accordingly be dismissed as untimely. If the second option is true, then the change in law raises grave questions as to whether retroactive application of the rule is appropriate in this case.

Finally, while acknowledging that a change in the law alone does not constitute an extraordinary circumstance sufficient to permit relief under Rule 60(b)(6), the majority nonetheless finds that "the district court's presumption about Tennessee's procedural rules is the factor that renders the promulgation of TSCR 39 an 'extraordinary circumstance,' permitting possible relief pursuant to Rule 60(b)(6)." The majority therefore asserts that the promulgation of what is essentially a "new rule" does not constitute an extraordinary circumstance for the purposes of Rule 60(b)(6), but the district court's misapplication of the "old rule" does meet that requirement. Applying this reasoning, it is difficult to see how any change in the law will fail to meet the extraordinary circumstance test.

One other oddity about *Adams* deserves comment. Whether Rule 39 "clarified" Tennessee law or "changed" it, there can be little doubt that it effectively overruled *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). At issue in *O'Sullivan* was whether the option of seeking discretionary review in the Illinois Supreme Court represented an "available" procedure for exhaustion purposes under AEDPA. *See* 28 U.S.C. 2254(c) (a state prisoner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has a right under the law of the State to raise, by any available procedure, the question presented."). Doubtless, the court noted, the question whether a state review procedure is "available" requires consideration of state law but the question ultimately is a federal one that turns not on the state label given to the procedure but on how the procedure operates in practice. After reviewing the Illinois procedure, which all agree mirrors the Tennessee Supreme Court's discretionary review procedure in all material respects, *O'Sullivan* concluded that the procedure was an "available" one under the federal statute and accordingly claims had to be exhausted there. In the aftermath of *O'Sullivan*, one would have thought that the historical question whether a discretionary-review procedure like Illinois's (or Tennessee's) was a "remed[y] available in the courts of the State" had finally been decided. As interpreted in *Adams*, however, Rule 39 purports retroactively to change the "available" remedy inquiry – a view of the law that not only allows Tennessee to overrule *O'Sullivan* but would allow Illinois to promulgate its own Rule 39 and reverse the outcome of *O'Sullivan* in that very case. Federal law is not that fragile. Availability in the final analysis is a question of federal law that ultimately turns on a "question of objective historical fact," *Wenger v. Frank*, 266 F.3d 218, 226 (3d Cir. 2001), that no State has the authority to change retroactively. *Cf. Carey v. Saffold*, 536 U.S. 214, 223 (2002) ("Ordinarily, for purposes of applying a federal statute that interacts with state procedural rules, we look to how a state procedure functions, rather than the particular name that it bears."); *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 456 (1958) (concluding that it was "unable to reconcile the procedural holding of the Alabama Supreme Court . . . with its past unambiguous holdings" on a given procedural issue). Because Abdur'Rahman relies on our panel decision in *Adams* to bring this claim, I would use this case to overrule that decision.

I do not believe that Abdur'Rahman's Rule 60(b) claim survives AEDPA's bar on second or successive habeas petitions; however if it does, then it should be construed as a claim arising under Rule 60(b)(1), and dismissed as untimely.

The majority's holding today conflicts with not only our own precedent, *see McQueen v. Scroggy,* 99 F.3d 1302, 1335 (6th Cir. 1996) ("We agree with those circuits that have held that a Rule 60(b) motion is the practical equivalent of a successive habeas corpus petition . . . ."), but also with that of our sister circuits. *See, e.g., United States v. Winestock,* 340 F.3d 200, 208 (4th Cir.), *cert. denied,* 124 S. Ct. 496 (2003); *Dunlap v. Litscher,* 301 F.3d 873, 876 (7th Cir. 2002); *Lopez v. Douglas,* 141 F.3d 974, 975 (10th Cir. 1998) (per curiam). Of particular relevance is the Eleventh Circuit's recent decision in *Gonzalez v. Secretary for Dep't of Corrections,* 366 F.3d 1253, 1281 (11th Cir. 2004) (recognizing two narrow exceptions - for clerical errors and fraud - to the rule that a Rule 60(b) motion is "second or successive" and

noting that "[a]n error of law, even one demonstrated by an intervening decision, does not fit either . . . exception[]"). Only the Second Circuit is of the view that generally "a motion under Rule 60(b) to vacate a judgment denying habeas is not a second or successive habeas petition and should . . . be treated as any other motion under Rule 60(b)." *Rodriguez v. Mitchell,* 252 F.3d 191, 198 (2d Cir. 2001).[3] To the extent the Second Circuit believes that Rule 60(b)(6) motions are different from habeas applications because they "seek[] only to vacate the federal court judgment dismissing the habeas petition," which is "merely a step along the way" to habeas relief, *id.* at 198-99, the dichotomy is a false one. Before AEDPA and since, the Supreme Court has made it clear that abuse of the writ may occur as readily in revisiting federal district court habeas decisions as in revisiting underlying state court decisions. *See, e.g., Felker v. Turpin,* 518 U.S. 651, 664 (1996) (AEDPA's "new restrictions on successive [federal] petitions constitute . . . a restraint on what is called in habeas corpus practice 'abuse of the writ'") (quotation omitted)*; McCleskey v. Zant,* 499 U.S. 467, 492-93 (1991) (recognizing that the "abuse of the writ" doctrine respects the finality of state court convictions by respecting the finality of a first federal habeas proceeding); *Woo Doo v. United States,* 265 U.S. 239, 241 (1924) (holding that while "the inflexible doctrine of res judicata" did not then apply in habeas proceedings, a petitioner "make[s] an abusive use of the writ of habeas corpus" when he attempts to use a second federal proceeding to revisit grounds raised in a first proceeding).

Contrary to petitioner's suggestion and to the observations of some courts, this conclusion does not mean that a claimant who brings a Rule 60(b) motion for fraud on the court will have it re-characterized as a "second or successive habeas corpus application" under AEDPA. In the first place, it is not Rule 60(b) that empowers litigants to seek such relief. That authority stems from "the inherent power" of a federal court, which allows it "to vacate its own judgment upon proof that a fraud has been perpetrated upon the court." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991). Rule 60(b) acknowledges the point when it says that "[t]his rule does not limit the power of a court . . . to set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(b). AEDPA nowhere purports to alter this "'historic power of equity to set aside fraudulently begotten judgments,'" *Chambers,* 501 U.S. at 44 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 235, 245 (1944)), even assuming Congress has the power to do so.[4]

In the second place, the conclusion that a fraud-on-the-court claim generally should not be treated as a "successive" petition has much in common with the Supreme Court's conclusion that a petitioner may bring a second petition if the first one was dismissed as unripe (*Slack*) or if the first petition was dismissed for failure to exhaust (*Martinez-Villareal*). Much of the historical debate over habeas corpus litigation has turned on the question of whether res judicata should apply to state court criminal proceedings or federal court habeas corpus decisions - and those res judicata principles contain exceptions that are relevant here. Historically, res judicata did not apply to habeas petitions. *See Fay v. Noia,* 372 U.S. 391, 423 (1963) (invoking "the familiar principle that res judicata is inapplicable in habeas proceedings"); *see also Sanders v. United States,* 373 U.S. 1, 7-8 (1963). But in the 1966 amendments to 28 U.S.C. § 2244(b), Congress adopted a "qualified application" of res judicata to habeas proceedings. *See McCleskey*, 499 U.S. at 467 (noting that the amendment "establishes a 'qualified application of the doctrine of res judicata'" to habeas proceedings by providing "that a federal court 'need not entertain' a second or subsequent habeas petition 'unless' the petitioner satisfies two conditions" - namely, a new ground for relief that was not deliberately withheld in earlier litigation) (quoting S. Rep. No. 1797, 89th Cong., 2d Sess., 2 (1966) and 28 U.S.C. § 2244(b) (1966)). And in enacting AEDPA in 1996, Congress imposed additional "restriction[s] on successive petitions," which again "constitute a modified res judicata rule." *Felker v. Turpin,* 518 U.S. 651, 664 (1996).

---

[3] The Second Circuit recently reaffirmed this "functional" approach in *Harris v. United States,* 367 F.3d 74, 77 (2d Cir. 2004) (noting that the court held in *Rodriguez* that "relief under Rule 60(b) is available with respect to a previous habeas proceeding only when the Rule 60(b) motion attacks the integrity of the habeas proceeding and not the underlying criminal conviction").

[4] The majority states that "the dissent offers no reason for permitting Rule 60(b)(3) motions based on fraud while prohibiting motions brought pursuant to the other provisions enumerated in Rule 60(b)." Not true. As explained above, the exception for fraud does not derive from the Rule itself but from a court's inherent power.

That Congress is trying to impose a "modified res judicata rule" on habeas corpus applications helps explain why some repeat habeas corpus petitions are "successive" and why others are not. The doctrine of res judicata has several well-established exceptions to the bar against subsequent actions, each of which accounts for the Supreme Court's prior decisions in this area as well as the appropriate treatment of a fraud-on-the-court motion. *Slack* and *Martinez-Villareal,* for example, are consistent with the res judicata principle that a dismissal without prejudice does not bar a second action on the same claim. *See Restatement of Judgments (Second)* § 20(2) ("A valid and final personal judgment for the defendant, which rests on the prematurity of the action [as did the dismissal on ripeness grounds in *Martinez-Villareal*], or on the plaintiff's failure to satisfy a precondition to suit [as did the dismissal on exhaustion grounds in *Slack*], does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law."); *see also Martinez-Villareal,* 523 U.S. at 645 ("It is certain that respondent's *Ford* claim would not be barred under any form of res judicata."). Likewise, it has long been true that fraud on the court represents an exception to res judicata. *See United States v. Beggerly,* 524 U.S. 38, 46 (1998) (holding that fraud on the court that is "sufficiently gross" "demand[s] a departure from rigid adherence to the doctrine of res judicata") (quotation omitted); *Chambers,* 501 U.S. at 44 (noting that the "historic power of equity to set aside fraudulently begotten judgments is necessary to the integrity of the courts") (citations and quotations omitted). Absent more concrete direction from Congress, there is no reason to think that Congress meant to abandon this traditional understanding of res judicata at the same time that it was seeking to impose a "modified res judicata" rule on successive habeas corpus applications.

This background principle not only helps to explain these exceptions to the "successive" petition bar (and potentially others, though only those consistent with AEDPA), but it also shapes the rule I would follow today and explains why I would reaffirm the essence of our decision in *McQueen*, 99 F.3d at 1335. AEDPA announces a "modified res judicata" bar because it *does* permit "successive" petitions, but only in two discrete settings - new rules of constitutional law and claims of actual innocence - and, even then, only after specific requirements have been met. *See* 28 U.S.C. § 2244(b)(2). Res judicata has never had a general exception for revisiting decisions "on the merits," and indeed the whole point of the doctrine is to establish finality once such decisions have been reached. As a matter of statutory interpretation, moreover, a statute that narrowly permits some successive petitions due to a change in the law cannot fairly be construed to permit other petitions due to changes in the law. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 14-15 (1981) ("[I]t is an essential canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. In the absence of strong indicia of congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate.") (quotation and citation omitted). Because AEDPA's limitations on habeas relief trump otherwise applicable Federal Rules of Civil Procedure, as I have noted, the AEDPA requirements must trump a contrary motion under Rule 60(b)(6). In the end, the Rule simply may not give what AEDPA has taken away. *See Pitchess v. Davis,* 421 U.S. 482, 489 (1975) (holding that "even if Rule 60(b) could be read to apply to this situation [ - reopening a judgment in a habeas case - ] it could not alter the statutory command").

For the foregoing reasons, I would affirm.